UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-23310-CIV-COOKE/GOODMAN

GBS INVESTMENT GROUP,

     Plaintiff,

v.

UNITED SPECIALTY INSURANCE COMPANY,

     Defendant.

_____/

## OMNIBUS REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND MOTION FOR SANCTIONS

Defendant United Specialty Insurance Company ("USIC") filed a motion for sanctions for alleged bad faith conduct by both GBS Investment Group ("GBS") and its counsel. [ECF No. 55]. GBS filed a response in opposition and USIC filed a reply. [ECF Nos. 60; 63].

Subsequently, after winning its summary judgment motion, USIC filed a motion for its attorney's fees ($61,119.50), which were incurred after October 29, 2018 -- the date USIC served an offer of judgment on GBS. [ECF No. 77]. In the same motion, USIC seeks non-taxable expert fees ($5,930.50) and its attorney's fees incurred before October 29, 2018 (approximately $8,000), as a sanction for GBS's alleged bad faith conduct, as outlined in its previously-filed motion for sanctions. GBS filed a response in opposition and USIC

filed a reply. [ECF Nos. 80; 82]. United States District Judge Marcia G. Cooke referred both motions to the Undersigned. [ECF Nos. 81].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** USIC's motion for attorney's fees incurred since October 29, 2018 pursuant to Florida Statute § 768.79 and award USIC **$55,007.10** in attorney's fees (applying a 10% across-the-board reduction).

As to USIC's motion for sanctions unrelated to its offer of judgment made under Florida Statute § 768.79, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** USIC's motion for sanctions.

The Undersigned finds that sanctions are warranted for Plaintiff's attorney Gregory Saldamando's abuse of the discovery process by submitting an altered estimate. Therefore, the Undersigned **respectfully recommends** that Mr. Saldamando be responsible for half of USIC's attorney's fees incurred in bringing its motion for sanctions.

Additionally, the Undersigned finds that GBS and Mr. Saldamando acted in bad faith in continuing to prosecute this lawsuit beyond July 29, 2019 (the date when GBS submitted an affidavit from its own expert stating that the damage was caused by Hurricane Irma). Thus, the Undersigned **respectfully recommends** that the District Court require Mr. Saldamando and GBS to split equally the cost of USIC's attorney's fees incurred since July 29, 2019.

I.     BACKGROUND

This lawsuit arose out of an insurance claim by GBS under its commercial property insurance policy issued by USIC. On June 22, 2018, GBS filed an action against USIC in the Circuit Court in the Eleventh Judicial Circuit in Miami-Dade County, Florida. [ECF No. 1]. The case was removed to the Southern District of Florida on August 14, 2018. *Id.* In its Second Amended Complaint, GBS alleges that it suffered a loss to its commercial property due to a roof leak on September 28, 2017, caused by wind-driven rain. [ECF No. 1-2, p. 3]. GBS alleges that USIC breached the insurance contract by failing to pay for the damages to the property. *Id.* at p. 9.

On October 29, 2018, several months after removing the case to federal court, USIC served an offer of judgment on GBS in the amount of $1,000. GBS did not accept the offer of judgment.

After discovery was completed and shortly before trial was scheduled to begin, Judge Cooke granted USIC's summary judgment motion. [ECF No. 71]. Judge Cooke noted that it "is undisputed that the interior of the Property sustained water damage caused by Hurricane Irma." *Id.* at p. 5. Judge Cooke further noted that:

> GBS did not file a memorandum of law in opposition to United Specialty's Motion for Summary Judgment. Nor did GBS cite to any caselaw or policy language that counter's United Specialty's position. Instead, GBS cites to a declaration prepared by its own expert whom confirmed United Specialty's position—that Property experienced water damage due to Hurricane Irma.

*Id.*

The policy excludes coverage for "any loss or damage . . . caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." [ECF No. 5, p. 8]. There is an exception to the windstorm exclusion if the water damage was not caused by wind-driven rain, rather that the damage was caused by a cause of loss covered by the Policy. Judge Cooke found that GBS did not present any evidence supporting this exception. Thus, Judge Cooke found that GBS's property damage is excluded under the policy, and awarded summary judgment in USIC's favor.[1]

---

[1]     Recently, one of GBS's named attorneys, Scot Strems, was suspended from the practice of law until further order of the Supreme Court of Florida. The Undersigned asked the parties to file a memorandum on whether this had any effect on the motion for sanctions and motion for attorney's fees. [ECF No. 83]. USIC took the position that Strems' suspension has no effect on its motion for attorney's fees. [ECF No. 84]. As to the motion for sanctions, USIC states that it is aware of no law or rules that would impact the Court's ability to award sanctions against GBS and/or its attorneys. *Id.* Further, it says that Mr. Strems' suspension may show that Mr. Strems has a history of committing similar sanctionable acts. GBS responded by merely stating that Mr. Strems is no longer handling any cases at the law firm, which has since changed its name to The Property Advocates, P.A. [ECF No. 88].

The Undersigned agrees that Mr. Strems' suspension has no effect on the resolution of whether USIC is entitled to attorney's fees under § 768.79. Regarding the motion for sanctions, the Undersigned did not note any direct involvement by Mr. Strems in the alleged bad faith conduct here. Rather, Mr. Saldamando appears to be the attorney primarily involved. Thus, Mr. Strems' suspension does not appear to be relevant to the specific facts involved in the motions before the Undersigned.

## II.   REQUEST FOR ATTORNEY'S FEES

### a.  Entitlement to Attorney's Fees Under § 768.79

A prevailing party is not ordinarily entitled to recover attorney's fees from its opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Here, USIC seeks attorney's fees under Florida's offer of judgment statute, Florida Statute § 768.79. Section 768.79 provides the following:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred . . . from the date of filing of the offer if the judgment is one of no liability . . .
>
> An offer must:
>
> (a) Be in writing and state that it is being made pursuant to this section.
>
> (b) Name the party making it and the party to whom it is being made.
>
> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
>
> (d) State its total amount.
>
> The offer shall be construed as including all damages which may be awarded in a final judgment.
>
> Fla. Stat. § 768.79(1), (2) (2005). The statute also states that a court can disallow an award of attorney's fees and costs if it finds that the offer was not made in good faith. Fla. Stat. § 768.79(7)(a).

*Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1356 (S.D. Fla. 2010).

The Eleventh Circuit "has deemed § 768.79 to be substantive for *Erie* purposes and, therefore, it is applicable to this case." *See id.* at 1357 (citing *McMahan v. Toto*, 311 F.3d 1077 (11th Cir. 2002)).

Here, on October 29, 2018, USIC served an offer of judgment in the amount of $1,000 on GBS. [ECF No. 77-1]. GBS did not accept the offer. As stated above, Judge Cooke granted USIC's summary judgment in favor of USIC on GBS's sole count (a breach of contract claim), finding that GBS's property damage is excluded under the policy. [ECF No. 71]. Thus, under § 768.79, a judgment of no liability was entered against GBS. *See Tiara Condo Ass'n*, 697 F. Supp. 2d at 1352 (stating a judgment of no liability was entered in favor of defendant where summary judgment was granted in defendant's favor).

Therefore, under § 768.79, USIC is entitled to its reasonable attorney's fees incurred defending this action since October 29, 2018.

GBS argues that USIC is not entitled to fees under § 768.79 because the general release attached to the offer of judgment was ambiguous. [ECF No. 80, p. 4]. Specifically, the general release included language that GBS "and its respective principals, heirs, executors, administrators, and *assigns*" agreed to release all claims relating to the insurance claim and lawsuit. [ECF No. 77-1, p. 11 (emphasis added)]. According to GBS, the proposed release was ambiguous because GBS executed an assignment of benefits to a water mitigation company called Super Dryout LLC on November 4, 2017. Thus, GBS claims that Super Dryout LLC would be an "assign" of GBS. [ECF No. 80, p. 2]. Therefore,

6

according to GBS, because the offer of judgment was to GBS but the release included all of GBS's "assigns," including Super Dryout LLC, it is ambiguous.

The Undersigned disagrees. The language used by USIC in the release to identify the Releasor, GBS, is boilerplate, standard language. The same language is used to identify the Releasee, USIC. [ECF No. 77-1, p. 11 ("Releasee," and its respective successors and assigns . . .")]. The fact that GBS entered into an assignment of benefits with a water mitigation company does not make that company an "assign" of GBS as that language is commonly understood in general releases.

Further, if there was any confusion, the release makes clear that "**[t]his release is a release of all claims asserted by the Releasor in this lawsuit, and this lawsuit alone**." *Id.* at p. 12. This language makes it especially clear that the settlement does not envision any claim held by Super Dryout LLC because Super Dryout LLC filed its own lawsuit on September 14, 2018 against USIC, seeking payment for water mitigation services performed for GBS.[2]

GBS relies on *Florida Peninsula Insurance Co. v. Brunner*, 193 So. 3d 1026, 1027 (Fla. 3d DCA 2016), where the Court found that an offer of judgment was ambiguous and not enforceable. However, the language contained in the release at issue in *Brunner*

---

[2]     The case is *Super DryOut LLC v. United Specialty Insurance Co.*, Case No. 2018-020020CC-23, County Court in the Eleventh Judicial Circuit in Miami-Dade County, Florida. Super DryOut's lawsuit was voluntarily dismissed with prejudice on August 20, 2019, which was less than two weeks after USIC filed its Motion for Sanctions in this case (on August 7, 2019).

purported to extinguish "other claims of third parties" and thus is distinguishable from the language used here, where such language is not used. *See id.* ("The fatal flaw in the present case has already been described: Paragraph 7(b) of the proposal purports to require Ms. Brunner's counsel to agree not only to assure that counsel's own legal claims to the settlement funds are extinguished, but also to assure that counsel will satisfy and extinguish 'other claims of third parties.'").

Similarly, the Undersigned does not find *Branford v. American Integrity Ins. Co. of Florida*, Case No. CACE-16-003198, Broward County Circuit Civil, to be controlling here. There, the release included language defining the releasor to include the plaintiff and "other person or entity purportedly claiming any right through her." [ECF No. 82-2, p. 7]. And again, that release did not contain the specific and limiting language here: "[t]his release is a release of all claims asserted by the Releasor in this lawsuit, and this lawsuit alone." *See* ECF Nos. 82-2; 77-1, p. 12.

Finally, although GBS does not raise the issue, the Undersigned notes that the $1,000 offer appears to be have been made in good faith. "Even a minimal offer can still be deemed a good faith offer as long as the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal." *See Tiara Condo. Ass'n*, 697 F. Supp. 2d at 1359 (internal citation omitted). $1,000 is a nominal amount, to be sure, but the risk of an adverse judgment against USIC was low, given

USIC's significant defenses, i.e., the hurricane exclusion, which ultimately proved meritorious.

Accordingly, the Undersigned finds that USIC is entitled to reasonable attorney's fees incurred after October 29, 2018, including fees incurred litigating its entitlement to attorney's fees.[3]

### b. Reasonable Attorney's Fees

USIC requests $61,119 in attorney's fees incurred from October 29, 2018 to October 31, 2019. [ECF No. 77, p. 3]. The hourly rates charged by the attorneys and paralegal representing USIC are as follows: Michael Simon (partner) $200.00 to $215.00; Nicholas A. Reeves (lead associate) $175.00 to $185.00; Brian S. Jacobson (associate) $185.00; and Kelly Sims (paralegal) $105.00 to $110.00. *Id.*

The Court must determine whether the requested amount of fees is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This amount is typically referred to as

---

[3]    "The law in Florida is equally clear that although a party cannot recover fees generated in litigating the amount of attorney's fees to be awarded, a party can recover fees generated in litigating their *entitlement* to attorneys' fees under § 768.79." *Tiara Condo. Ass'n*, 697 F. Supp. 2d at 1360 (emphasis added). USIC states that it incurred approximately 10 hours (totaling $2,000 in attorney's fees) in litigating its entitlement to attorney's fees. [ECF No. 82, p. 2, n. 2]. However, USIC did not provide its billing records. Thus, the Undersigned cannot make a finding at this time as to whether those amounts are reasonable.

the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433-37. The applicant bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *A.C.L.U. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

### i. *Reasonable Hours Expended*

The Court must evaluate the reasonableness of the total hours expended by USIC's counsel. In doing so, the Court should exclude compensation for hours that are "excessive, redundant or otherwise unnecessary." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434). Further, the Court must omit those hours that would be unreasonable to bill a client "irrespective of the skill, reputation, or experience of counsel." *Id.*

USIC is seeking fees for 346.10 hours billed. [ECF No. 77, p. 8]. The Undersigned has reviewed USIC's time records. [ECF No. 77-2]. USIC states that it highlighted entries relating to other cases and deleted those amounts from the amount requested. [ECF No. 77, p. 9, n. 4]. However, the Undersigned noticed that there were some entries relating to the lawsuit brought by Super Dryout LLC, which were not highlighted, and it is unclear

whether these amounts were removed from the total amount billed. *See* ECF No. 77-2 (10/29/2018, 10/30/2018, 11/26/2018, 1/3/2019 entries by "NR").

Further, after reviewing the entries, the Undersigned finds that some of the entries are vague or include "block billing,"[4] such as: a January 3, 2019 entry for reviewing and analyzing the claims file for 4.4 hours; a March 29, 2019 entry for "preparing for a discovery hearing" totaling 2.5 hours; a June 12, 2019 entry for review of claims file for 3.5 hours (which was also duplicative of a prior entry); and a September 6, 2019 entry for "draft/revise reply in support of motion for sanctions" for 6.5 hours. Additionally, the Undersigned notes that USIC billed travel time at the full attorney rate (6/20/2019 entry by "MS" totaling 6.2 hours).

Thus, because the fee documentation is voluminous, the Undersigned finds that a 10% across-the-board reduction is appropriate in light of the missed entries for Super Dryout LLC, occasional vague descriptions, and periodic block billing entries. *See Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013) (reducing attorney's fees by 5% due to attorney's block billing); *see also United Food Mart, Inc. v.*

---

[4]   "'Block billing' occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013).

*Motiva Enters., LLC.,* No. 04-60539-CIV, 2006 WL 3068820, at *4 (S.D. Fla. Feb. 8, 2006) (reducing attorney's fees by 10% where attorney used block billing, the entries were vague, and some entries appeared excessive).

### ii. *Reasonable Hourly Rate*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id.* In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

Here, Michael Simon has practiced insurance defense and insurance coverage litigation for more than 24 years and billed at an hourly rate of $200 to $215. Nicholas A. Reeves has practiced insurance coverage litigation for more than seven years and billed at an hourly rate of $175 to $185. Brian S. Jacobson has practiced insurance coverage litigation for more than 11 years and billed at an hourly rate of $185. And Kelly Sims has

been a paralegal for insurance defense and insurance coverage litigation for more than seven years and billed at an hourly rate of $105 to $110.

Thus, the Undersigned finds that all the hourly rates sought by USIC are *more* than reasonable. *See, e.g.*, *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1350 (S.D. Fla. 2007) (finding that rate of $450 was reasonable for attorneys practicing in specialty for over ten years); *Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc.*, No. 06-61231-CIV, 2010 WL 680948, at *12 (S.D. Fla. Feb. 24, 2010) (finding that $335 per hour for a six-year associate was reasonable). In fact, the attorney hourly rates could likely have been an additional $100 (or even more) per hour and *still* have been deemed reasonable.

### c. Conclusion

For the reasons explained above, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** USIC's motion for attorney's fees and award USIC **$55,007.10** in attorney's fees (applying a 10% across-the-board reduction).[5] USIC's request for non-taxable expert fees ($5,930.50) and its attorney's fees incurred prior to October 29, 2018 (approximately $8,000) is discussed below since it relates to GBS's alleged bad faith conduct discussed in USIC's motion for sanctions.

---

[5]     Because there were multiple attorneys and a paralegal who all billed at different hourly rates, the Undersigned applied the deduction to the total amount billed rather than to the total number of hours, which would have required the Undersigned to calculate a separate deduction amount for each biller.

### III.    MOTION FOR SANCTIONS

USIC filed a motion for sanctions for alleged bad faith conduct by both GBS and its counsel at The Strems Law Firm. [ECF No. 55]. GBS filed a response in opposition and USIC filed a reply. [ECF Nos. 60; 63]. Additionally, in its motion for attorney's fees, USIC seeks non-taxable expert fees ($5,930.50) and its attorney's fees incurred before October 29, 2018 (approximately $8,000), as a sanction for GBS's alleged bad faith conduct as outlined in its motion for sanctions. [ECF No. 77]. GBS filed a response in opposition and USIC filed a reply. [ECF Nos. 80; 82]. However, GBS addressed only the validity of fees incurred pursuant to the offer of judgment. GBS did not address USIC's request for non-taxable expert fees and attorney's fees incurred before October 29, 2018.

USIC seeks sanctions against GBS and its attorneys under the Court's inherent powers and under Federal Rule of Civil Procedure 37 for the following conduct: (1) altering FGF Claims Consultants, Inc.'s estimate of damages and producing it in discovery,[6] (2) destroying maintenance and repair records that were responsive to USIC's discovery requests, (3) instructing a third-party, Brown's Roofing and Repairs, to disregard USIC's subpoenas, and (4) prosecuting a frivolous lawsuit. [ECF No. 55].

As relief, USIC sought an order of dismissal or striking GBS's pleadings, and an award for attorney's fees and costs.

---

[6]    FGF is the public adjuster used by GBS.

14

### a. Applicable Legal Principles and Analysis

Federal courts derive their power to sanction any attorney, law firm, or party from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991). Each source sanctions different conduct and wrongdoers.

"A court's inherent power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (internal citation omitted). A court may exercise this inherent power to sanction both an attorney or party who has acted with subjective bad faith. *Id.* "However, in the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224-25.

### i. *Altered FGF Estimate*

USIC alleges that GBS altered FGF's estimate during discovery. On March 20, 2018, GBS, through its counsel, submitted this estimate to USIC. [ECF No. 42-2, p. 4].

**FGF Claims**

Insured:   GBS INVESTMENT GROUP LLC
Property:   9700 NW 7 AVE
            MIAMI, FL 33150

Reference:
Company:   UNITED ESPECIALTY

Claim Number:                    Policy Number: USA162448                    Type of Loss: Hurricane

Date of Loss:   9/10/2017                    Date Received:
Date Inspected:                              Date Entered:   3/19/2018 10:58 AM

Price List:   FLMI8X_MAR18
              Restoration/Service/Remodel
Estimate:   GBS_INVESTENT_IRMA

However, later, during discovery, GBS, through its counsel, produced this version:

**FGF Claims**

Insured:   GBS INVESTMENT GROUP LLC
Property:   9700 NW 7 AVE
            MIAMI, FL 33150

Reference:
Company:   UNITED ESPECIALTY

Claim Number:                    Policy Number: USA162448                    Type of Loss:   Roof Leak

Date of Loss:   09/28/2017                    Date Received:
Date Inspected:                              Date Entered:   3/19/2018 10:58 AM

Price List:   FLMI8X_MAR18
              Restoration/Service/Remodel
Estimate:   GBS_INVESTENT_

The altered version has a different date of loss (9/28/2017), removes references to

"hurricane" and "Irma," and now states that the type of loss is a **roof leak.** The alterations

are obvious because they are in a bigger and different font size than the original version

produced by GBS to USIC. However, the document still indicates "GBS_INVESTENT_IRMA" [sic] in several of its headings, indicating that the person or persons who altered the document did not remove all references in the document to Irma. *See* ECF Nos. 42, ¶ 12; 63-1.

According to USIC, the altered estimate was produced on four different occasions by GBS to USIC -- the initial response served January 30, 2019; the supplemental response served March 1, 2019; the amended supplemental response served March 29, 2019; and the second amended supplemental response served April 12, 2019. [ECF Nos. 55, p. 7, n. 4; 63-1]. According to USIC, the original estimate was not included in the three most recent productions. But it was provided, along with the altered estimate in the first production on January 30, 2019. [ECF No. 63, p. 4, n. 4].

Later, USIC served a subpoena on FGF for its complete file relating to this claim. On April 24, 2019, FGF responded to the subpoena and submitted the original version of the estimate, not the altered version. [ECF Nos. 42, ¶ 5; 63-2]. Thus, it appears that FGF did not alter its own estimate. This is also supported by the fact that if FGF revised the estimate it would have presumably used its own estimating software that would have included consistent font type and size throughout the document.

In response to USIC's motion for sanctions, GBS states that the "undersigned counsel [Gregory Saldamando] can assure this Court that counsel did not alter the FGF estimates or any other document, and takes great offense and umbrage at even the

slightest suggestion of same." [ECF No. 60, p. 2]. GBS attaches a sworn declaration from the corporate representative of GBS, Irina Kardash, which provides that, "As stated in my deposition, I never altered any of the FGF estimates nor do I know who did." [ECF No. 60-1, p. 1]. However, Mr. Saldamando did not provide a sworn declaration. GBS posits in its response, "maybe it was FGF who made a mistake in the estimate and just corrected the date of loss." [ECF No. 60, p. 3].

One would expect that GBS's counsel would have gone to great lengths to confirm this with FGF -- to disprove the more-likely explanation that GBS or its attorneys altered the estimate. As explained above, GBS and its attorney's theory that FGF altered the estimate does not make sense because FGF produced to USIC all of its documents relating to the claim, which did not include the altered estimate. GBS fails to address this in its response.

The Undersigned agrees with USIC that someone at The Strems Law Firm likely altered the estimate or knowingly submitted an estimate altered by GBS to support their claim that the damages occurred on September 28, 2017 due to wind-driven rain and not during Hurricane Irma. The Undersigned cannot be *absolutely* certain that is what happened. Alternatively, it is possible that someone at GBS (other than Ms. Kardash) altered the estimate. But regardless, counsel for GBS, Gregory Saldamando, then produced this obviously altered-after-the-fact estimate to USIC. [ECF No. 63-1].

18

The Undersigned finds that, by producing a clearly-altered estimate, Mr. Saldamando abused the discovery process by producing a document that was intended to deceive USIC. *See Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522-23 (11th Cir. 1986) ("[A]s members of the bar, and officers of the court, our primary responsibility is not to the client, but to the legal system. . . . Advocacy does not include 'game playing.' Conduct such as that engaged in here must not, can not and will not be tolerated.").

"Rule 37 of the Federal Rules of Civil Procedure provides a district court with authority to impose sanctions, including dismissal, on a party for abuse of the discovery process." *See Goodman v. New Horizons Cmty. Serv. Bd.*, No. 05-14717, 2006 WL 940646, at *1 (11th Cir. Apr. 12, 2006); *see also Action Marine, Inc. v. Cont'l Carbon, Inc.*, 243 F.R.D. 670, 682, 686 (M.D. Ala. 2007) (awarding monetary sanctions against Defendant for discovery violations, including Defendant's alteration of documents produced to Plaintiff and "purposeful scheme to prevent [Plaintiff] from discovering documents that [Defendant] viewed as harmful to their defense of the case"); *Pesaplastic, C.A.*, 99 F.2d at 1519 (internal citation omitted) (stating district court has "broad, although not unbridled, discretion in imposing sanctions" under Rule 37).

Thus, the Undersigned finds that sanctions are warranted here for Mr. Saldamando's abuse of the discovery process. Here, judgment has already been entered in USIC's favor. Thus, harsher sanctions, such as dismissal or striking of pleadings, are

unavailable and/or moot. Therefore, the Undersigned **respectfully recommends** that Mr. Saldamando be responsible for half of USIC's attorney's fees incurred in bringing this motion for sanctions.

As noted below, the Undersigned is also recommending that the District Court require Mr. Saldamando to pay 50% of USIC's attorney's fees incurred since July 29, 2019 for Mr. Saldamando and his client's continued bad-faith prosecution of this action. Thus, those fees should include USIC's fees incurred in briefing the motion for sanctions, which was filed on August 7, 2019. However, to the extent, that USIC incurred fees preparing the motion for sanctions before July 29, 2019, Mr. Saldamando shall be responsible for 50% of those fees as well.[7]

### ii.   *Spoliation of Records*

USIC argues that GBS's destruction of records, including maintenance and repair records, in February 2019 is a sanctionable spoliation of records. The Undersigned disagrees.

On December 10, 2018, USIC served discovery requests on GBS, including a request for all documents relating to any repairs performed on the roof, interior ceiling, and any renovations since the date that GBS purchased the property. [ECF No. 55-2, p.

---

[7]     This should be deducted from the amount that GBS is responsible for pursuant to § 768.79. In the interest of fairness, Mr. Saldamando should not be able to escape paying USIC's fees due to its misconduct simply because GBS is also on the hook for USIC's fees pursuant to the offer of judgment. The same 10% across the board reduction to USIC's fees should apply to the portions that Mr. Saldamando pays as well.

4]. However, while these discovery responses were apparently still outstanding, USIC

took the deposition of GBS's Rule 30(b)(6) representative, Irina Kardash, on June 5, 2019.

During the deposition, the following line of questioning took place:

> Q. Are there any documents or files maintained by GBS as to historical repairs, meaning if the AC company was called out in 2015 to do a repair' does GBS have records of that?

> MR. SALDAMANDO: I'll object to form. You can answer.

> THE WITNESS: Okay. If you ask me that question in the month of January of this year, I would probably say yes because in February we had to get rid of all our stuff, and as a matter of fact, we closed our storage and we threw everything away. Because, you know, it's been there for so long and I understood that I, you know, I had to keep reference for three years or something like that, bank statements and stuff, but other than that, everything was destroyed.

> MR. SIMON: So February of 2019 –

> A. Nineteen.

> Q. -- GBS destroyed documents?

> A. That's correct. We had, I mean we just closed the storage. I didn't want to pay for it anymore.

> Q. Who destroyed the documents?

> A. I did.

> Q. And those documents would have included documents pertaining to the repairs to the building?

> A. Possibly, yes.

> Q. So if a roofer had been hired in 2010 to do a patchwork on the roof and there was a record of it, those would have been in the records destroyed?

21

A. Absolutely. Absolutely. It's been nine years ago.

Q. How about for 2014 or 2015, same thing if a roofer was hired?

A. Probably.

Q. Those records would now be destroyed?

A. Yes.

Q. How about AC maintenance records, 2014, 2015?

A. Same thing, all the records, I mean I destroyed all the records.

Q. Going to -- so right now GBS has records going how far back?

A. I don't know, maybe like a year.

Q. So in February of 2019 you destroyed GBS's records which include all the maintenance and repair records as to the building?

A. Everything.

MR. SALDAMANDO: I'll object to form.

MR. SIMON: Except for a year prior to February 2019?

A. Probably, yes, a year or two maybe.

Q. Did you take pains to make sure you didn't destroy any records pertaining to this insurance claim, take steps?

A. No, definitely not, I didn't destroy anything.

Q. I'm saying you took steps to make sure you didn't?

A. Absolutely, yes. I mean I've had everything in my file since, whatever I have it, it was not destroyed.

Q. Did anybody assist you with the destruction of the documents?

A. Yes.

Q. Who did?

A. Two of the people I hired, two workers.

Q. How were the documents destroyed?

A. We brought it to the Flamingo garbage space in Miami.

Q. Did you know at the time that you were destroying the documents that this lawsuit was pending, and there may be documents that my client had requested or would be requesting regarding –

A. No, I did not.

Q. -- maintenance issues?

A. And I don't think we had any -- anything, any records that belong to this case. I mean everything that belongs to this case was in this folder.

Q. What I'm asking you about is whether or not there are any records that exist regarding AC repairs that were done for five years before 2017 and you're saying those would have been destroyed if they exist; correct?

A. Yes.

Q. Same thing if Alec had hired a roofer to go do a quick patch on the roof, those records would have been destroyed if they were from 2015, '16, '14?

A. There were no problems with the roofer, but all the records were destroyed, that's correct.

Q. If a maintenance man had been hired to do a patch job or a paint in the interior?

A. Everything was destroyed.

Q. That was destroyed?

A. That's correct.

[ECF No. 43-1, pp. 138-142].

The Eleventh Circuit in, *Tesoriero v. Carnival Corp.*, No. 18-11639, 2020 WL 3969265 (11th Cir. July 14, 2020), summarized many of the common law fundamental principles of spoliation sanctions, and they are listed below:

1.     "Spoliation is defined as the destruction of evidence or the significant and material alteration of a document or instrument." *Id.* at *9 (internal citation omitted).

2.     "In some circumstances, a party's spoliation of critical evidence may warrant the imposition of sanctions." *Id.*

3.     When deciding whether to impose sanctions, several factors are relevant: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed." *Id.* (internal citation omitted).

4.     Spoliation sanctions "cannot be imposed for negligently losing or destroying evidence." *Id.*

5.     In the context of spoliation, bad faith "generally means destruction for the purpose of hiding adverse evidence." *Id.*

6.     Even if bad faith were shown, a decision to not impose sanctions would be appropriate "if the practical importance of the evidence was minimal." *Id.* (internal

citation omitted). Thus, "evidence must be crucial to the movant being able to prove its prima facie case or defense to establish spoliation" and the ability to impose sanctions. *Id.* (internal citation omitted).

7.      "[B]ad faith can be established by circumstantial evidence only when the act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Id.* at *10 (internal citation omitted).

8.      Determining whether the spoliator was "fully aware" of a desire to inspect the evidence is a factor which is considered when determining whether the spoliator acted in bad faith. *Id.*

Here, considering these common law principles outlined in *Tesoriero*, the Undersigned does not find that spoliation sanctions are appropriate. First, while it is *possible* that one or more of the destroyed documents kept in storage were directly relevant to USIC's defenses, USIC does not point to a specific document that was destroyed, other than to say that generally repair and maintenance records for the building are relevant to whether the roof had pre-existing damages. It is not as if USIC had reason to believe that repairs were performed on a specific day and GBS has now destroyed those records. USIC's belief that the destroyed documents included directly relevant evidence is speculative.

Second, the Undersigned finds that GBS's destruction of the documents was likely the result of negligence and recklessness and not a specific bad faith intent to destroy the

records. According to Ms. Kardash, she destroyed the documents when she closed a storage unit. She freely volunteered this information to USIC's counsel during her deposition and asserted that she had not destroyed any evidence that was relevant to this matter. Maybe it was her mistaken belief that maintenance records would not be relevant, which is a negligent and a reckless assumption, or she was not thinking about the discovery requests at all when she emptied the documents out of storage. But nevertheless, there is no evidence that it was done for the purpose of depriving USIC of these documents.

Third, it does not appear that USIC was actually prejudiced as a result of the destruction of evidence. Again, it is unclear what documents were destroyed and whether they would have been helpful. But regardless, USIC prevailed on its summary judgment motion.

Accordingly, the Undersigned does not find that spoliation sanctions are appropriate here for GBS's destruction of unidentified documents in storage.

### iii.   *Interference with Subpoena to Brown's Roofing*

On March 18, 2019, USIC served a subpoena for records on Brown's Roofing and Repairs, the roofing company GBS retained to perform repairs after the loss. [ECF No. 55-4]. Because no response to the subpoena was received, Ms. Kelly Sims, a paralegal at defense counsel's office, called Brown's Roofing and Repairs to inquire as to the status of the response to the subpoena. [ECF No. 55-5]. On June 3, 2019, Ms. Sims spoke with Mr.

Larry Brown, the owner of Brown's Roofing and Repairs, who stated that he spoke with GBS about the subpoena and that GBS instructed him that he did not need to respond. *Id.*

USIC then proceeded to subpoena Larry Brown and the 30(b)(6) corporate representative of Brown's Roofing and Repairs for deposition. The subpoenas were served on June 8, 2019 but neither Mr. Brown nor anyone else on behalf of Brown's Roofing and Repairs appeared for the depositions. [ECF No. 55-6, pp. 2-15].

GBS points out that Irina Kardash was deposed regarding this topic as follows:

Q. Have you ever had any discussions with anybody at Brown's Roofing including Mr. Brown?

A. No.

Q. Are you aware of anyone at GBS having any discussions with Mr. Brown telling him not to respond to my office for subpoena for records in this case?

A. Not that I know of.

Q. Do you know if Alex [a business partner] spoke to Mr. Brown about the subpoena for records in this case?

A. I don't know about that.

[ECF No. 43-1, p. 97].

Additionally, attached to USIC's response is Ms. Kardash's sworn declaration, which states that, "I vehemently disagree with any accusation that I told anyone at Browns roofing to disregard a subpoena . . . As stated in my deposition, I never have spoken to anyone at Browns roofing." [ECF No. 60-1, p. 1].

27

The Undersigned finds it likely that *someone* at GBS, maybe not Ms. Kardash, instructed Mr. Brown that he did not need to respond to the subpoena. However, the Undersigned has some lingering doubts. When Ms. Sims spoke to Mr. Brown, presumably she made clear that Brown's Roofing did in fact need to respond to the subpoena. Yet Brown's Roofing still failed to comply with the subsequently served subpoenas. USIC could have moved for an order to show cause directed at Brown's Roofing to compel Mr. Brown's deposition (and learn his under-oath answers to questions about his company's failure to honor subpoenas), but it did not take this step.

Thus, the evidence presented supports that Mr. Brown made this statement to Ms. Sims. However, Mr. Brown proved uncooperative and refused to respond to subsequent subpoenas. Thus, it is possible that Mr. Brown did not want to respond and simply told Ms. Sims he did not think he needed to respond.

If the Undersigned were to recommend awarding sanctions against GBS based on this statement, the Undersigned would recommend that GBS be responsible for USIC's fees incurred serving additional subpoenas on Brown's Roofing and its attendance at the deposition Mr. Brown failed to attend. But GBS is *already* paying all of these fees incurred pursuant to § 768.79, since they were incurred after October 29, 2018. Therefore, for practical purposes, it does not matter whether the Undersigned accepts or rejects USIC's position on sanctions against GBS for the purported interference with the subpoenas to Brown's Roofing.

### iv.  *Alleged Bad Faith Litigation*

According to USIC, this *entire* lawsuit has been frivolous and GBS and its counsel brought a claim for what is clearly an uncovered insurance claim. USIC states that it appears that GBS and its counsel attempted to disguise the cause of loss as wind-driven rain on September 28, 2017, as opposed to wind-driven rain during Hurricane Irma under the mistaken belief that it would be covered if it occurred on another day. But then, during the summary judgment stage, GBS submitted an affidavit from its own expert stating that the damage was likely the result of wind-driven rain during Hurricane Irma.

The Undersigned does not find that USIC has presented evidence proving that GBS and its counsel presented a frivolous claim *from its inception*. However, the Undersigned finds that GBS and Mr. Saldamando acted in bad faith in continuing to prosecute this lawsuit beyond July 29, 2019 (the date when GBS submitted an affidavit from its own expert stating that the damage was caused by Hurricane Irma).

### 1.  Facts

On October 16, 2017, GBS initially reported a loss for Hurricane Irma damage with a date of loss of September 10, 2017. [ECF No. 42-1]. However, that same day, an amended notice of loss was submitted, contending that the loss was caused by wind-driven rain that occurred on September 28, 2017. [ECF No. 42-5].[8]

---

[8]  It is unclear what day the amended notice of loss was provided to USIC. USIC states in its motion for sanctions that the amended notice was provided the same day as

USIC denied GBS's claim on February 22, 2018. [ECF No. 55-1, p. 2]. The letter denying coverage provides that, based on USIC's inspection, it is USIC's opinion that the interior damage to the wall was consistent with long-term water/moisture entering the building envelope through gaps in the windows and doors. *Id.* Further, USIC states that the location, pattern, and severity of damage to GBS's drywall indicates that rainwater/moisture has been occurring for a period of at least several months, if not years, prior to the inspection, and was not the result of any single water or weather event. *Id.* at p. 3. Additionally, USIC's letter provides that because the second-floor roof was replaced in December 2017, it was not possible to determine the cause/timeline of the reported water intrusion. *Id.*

Therefore, USIC found there was no coverage based on the exclusions and limitations in the policy, including the exclusions for flooding, wear and tear, continuous leakage of water, damage caused by inadequate maintenance, loss caused by windstorm; and a limitation for interior damage caused by rain unless the building first sustains damage by a covered cause of loss to its roof or walls through which the rain enters. *Id.* at pp. 3-7.

On March 20, 2018, GBS, through its counsel, submitted an estimate of damages in support of its claim prepared by adjuster FGF Claims. [ECF No. 42-2, p. 4]. The estimate

---

the first notice. [ECF No. 55, p. 1]. However, its summary judgment briefing references correspondence dated December 7, 2017. [ECF No. 42-5].

stated that the "type of loss" was a hurricane and that the date of loss was September 10, 2017. *Id.* GBS's counsel also submitted an invoice for water mitigation from Super Dryout LLC, which notes a date of loss of September 10, 2017. [ECF No. 42-4, pp. 2-3].

On June 22, 2018, GBS filed an action against USIC in the Circuit Court in the Eleventh Judicial Circuit in Miami-Dade County, Florida. [ECF No. 1]. The case was removed to the Southern District of Florida on August 14, 2018. *Id.* In its Second Amended Complaint, GBS alleges that it suffered loss to its commercial property due to a roof leak on September 28, 2017, caused by wind-driven rain. [ECF No. 1-2, p. 3]. GBS alleges that USIC breached the insurance contract by failing to pay for the damages to the property. *Id.* at p. 9.

As discussed above, later, in early 2019, GBS, through its counsel Mr. Saldamando, produced to USIC an estimate that was altered to reflect a September 28, 2017 loss date for a roof leak.

In its verified answers to interrogatories, GBS states that it "suffered a physical loss to the property due to roof leak, caused by wind driven rain." [ECF No. 55-3, p. 10].

During her June 5, 2019 deposition, Ms. Kardash, the corporate representative for GBS (a business which owned a commercial property building that was leased to different auto restoration companies) testified that GBS received a call sometime around September 27, 2017 from the existing tenant, complaining about a large roof leak. [ECF

No. 43-2, p. 38]. She stated that she did not know when the leak actually started and does not remember asking the tenant. *Id.* at p. 40.

Ms. Kardash then went out to the premises on September 28, 2017 and observed the water damage. *Id.* at p. 85. She stated that the ceilings were wet but there was not water coming through. *Id.* at p. 47. She admitted that she did not know whether the leaking started "a day before or three days before or five days before." *Id.* at p. 86. She stated that she did not go out to the property between September 10, 2017 and the time she visited on September 28, 2017. She stated that she did not know whether Hurricane Irma caused any damage because she is not an engineer, but that she did not believe it caused damage. *Id.* at p. 49.

She further stated that, to the best of GBS's knowledge, wind-driven rain caused the damages. *Id.* She also stated that she was aware that the policy does not cover hurricane damage and thus there would be no coverage for Hurricane Irma damage. *Id.* at p. 90. But she stated she was unaware that the policy excluded damage for wind-driven rain even if not caused by a hurricane. She further said that she did not know why the water mitigation company listed the date of loss as September 10, 2017 (the date of Hurricane Irma). *Id.* at p. 94.

USIC's counsel also showed Ms. Kardash pictures of water stains at the property and asked her the cause of the damage and she said it was due to wind-driven rain. *Id.* at

p. 127. She also said that she did not know whether it rained where GBS is located on September 27, 2017. *Id.* at p. 129.

A few weeks later, on June 21, 2019, USIC filed its summary judgment motion. [ECF No. 41]. USIC argued that GBS's damage (caused by wind-driven rain) is simply not covered unless the building was first damaged by a covered cause of loss, which there is no evidence of here. *Id.* at p. 2. USIC pointed out that its engineer determined that rain entered the building envelope through leaks in the walls as a result of wear and tear and inadequate maintenance of the window and door perimeter sealant and that there was some wind damage from Hurricane Irma. *Id.* at p. 9. USIC presented an affidavit from a meteorological expert, Mr. Branscome, who concluded that wind gusts (less than 20 miles per hour) and rain (1/4 of an inch) were very minimal on the alleged date of loss of September 28, 2017, but that the property experienced wind gusts of 75 miles per hour and 6 to 7 inches of rain during Hurricane Irma on September 10, 2017. *Id.* at p. 11; [ECF No. 42-9, p. 2].

In response to USIC's summary judgment motion, on July 26, 2019, GBS submitted a "competing affidavit" from licensed roofing contractor Rafael Leyva. [ECF No. 51]. The affidavit provides Mr. Leyva's opinion that "the hurricane caused debris to strike and damage not only the air conditioner on the room but the roofing system as well, and this impact from the debris allowed moisture and rainwater to subsequently enter the interior

of the property through openings and caused the resulting damage that was discovered on or about September 28th, 2017." *Id.* at p. 6.

## 2.  Analysis

A court may exercise its inherent power to sanction both an attorney or party who has acted with bad faith. *Purchasing Power, LLC*, 851 F.3d at 1223. If egregious enough, pursuing a claim "without reasonable inquiry into the underlying facts" can constitute the bad faith necessary to support a fees sanction. *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1179 (S.D. Fla. 2012); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1188 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award."). However, "the Court must exercise its inherent power with 'restraint and discretion.'" *Taverna Imports, Inc. v. A & M Wine & Spirits, Inc.*, No. 15-24198-CIV, 2018 WL 3611405, at *16 (S.D. Fla. July 27, 2018) (citing *Chambers*, 501 U.S. at 46).

The Undersigned finds there are a few possible scenarios here. The first scenario is that GBS reported what was clearly a hurricane loss to the public adjuster and subsequently The Strems Law Firm, and when The Strems Law Firm realized that the policy had a hurricane exclusion, it instructed its client to falsely report the loss as a roof leak occurring after Hurricane Irma. The second scenario is that GBS decided independently, even though it knew the damage was caused (or at least exacerbated) by Hurricane Irma, to report that the damage occurred later, on September 28, 2017. The

third scenario is that GBS did not know when or how the damage occurred and decided to proceed with the explanation that the damage occurred on September 28, 2017 (when it discovered the damage), even though the more obvious explanation was that the damage occurred weeks earlier during Hurricane Irma.

The first and second scenarios would involve clear bad-faith conduct and would mean the lawsuit was frivolous from its inception. The third scenario, however, would not generate a clear result. The Undersigned finds that, even though it is a close-call, there is not enough evidence to support the first or second scenario.

As stated during her deposition, Ms. Kardash admitted that she does not know when the actual roof leaks occurred. She also conceded that the damage may have been caused by Hurricane Irma, but it was her understanding that the damage occurred at approximately around the time she visited the property on September 28, 2017. While this appears to be a weak claim for coverage under the policy, it is not clear that she was certain that the damage was caused by Hurricane Irma, as she (a non-expert) cannot inspect the damage and conclusively determine what caused it. Additionally, she did not reside or work in the building at the time of the alleged loss, but rather was an owner of the commercial property, which was leased to a tenant at the time.

There is no sworn testimony from a third-party, like the public adjuster or someone from the water mitigation company, that GBS unequivocally reported this to be a Hurricane Irma claim. Likewise, there is no testimony from the tenant in the subject

property that he started noticing roof leaks immediately following the hurricane and that he communicated this to Ms. Kardash.

The Undersigned finds it highly suspicious that the FGF estimate and water mitigation documents referenced a Hurricane Irma loss, and it appears that The Strems Law Firm likely altered the FGF estimate to remove the references to Hurricane Irma (and at a minimum produced a clearly-altered estimate to USIC). Nevertheless, the Undersigned is hesitant to find bad faith at the *inception* of the claim on those grounds.

Additionally, the Undersigned finds this insurance coverage lawsuit, which turned on the application of an exclusion in the policy, to be distinguished from a situation where a plaintiff knows from the inception with a likely degree of certainty that the lawsuit has absolutely no grounds. The policyholder, GBS, had the initial burden of proving that direct physical loss occurred to the property during the policy period. *See Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982). Once GBS met that initial burden, the insurer, USIC, had the burden to prove that an exclusion to coverage applies. *See E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1351 (S.D. Fla. 2015).

Here, USIC does not appear to dispute that GBS suffered a direct physical loss to its property, i.e., water damage to drywall, etc. Thus, the burden was on USIC to show that an exclusion to coverage applied, such as the wear and tear exclusion or hurricane exclusion. Further, the factual dispute as to whether an exclusion applied would need to

be resolved by an expert, not by GBS, who cannot say with certainty what caused the damage to its property. Thus, it is difficult to say that GBS brought a frivolous suit if (1) it did not know for certain what the cause of the damages was, and (2) it would ultimately be the insurer's burden to prove that the damage was caused by an exclusion.

Accordingly, while the Undersigned is troubled by the accumulation of what appears to be questionable behavior on both the part of GBS and The Strems Law Firm, it is not clear that GBS and/or its attorneys acted with subjective bad faith in *filing* the lawsuit against USIC.[9]

However, the Undersigned *does* clearly find that GBS and its counsel continued to prosecute a lawsuit that was meritless and frivolous beginning on July 29, 2019. This is the date that GBS submitted a "competing affidavit" from licensed roofing contractor Rafael Leyva in opposition to USIC's summary judgment motion. [ECF No. 51]. The affidavit provides Mr. Leyva's opinion that "the hurricane caused debris to strike and damage not only the air conditioner on the room but the roofing system as well, and this impact from the debris allowed moisture and rainwater to subsequently enter the interior of the property through openings and caused the resulting damage that was discovered on or about September 28th, 2017." *Id.* at p. 6.

---

[9]     The Undersigned further notes that, if USIC believed that the lawsuit was frivolous at the time of filing, it could have served a Rule 11 sanctions motion, which would have put GBS and its attorneys on notice that it believed the lawsuit to be frivolous and provided it with an opportunity to dismiss the action before proceeding any further in the litigation.

This was not actually a **competing** affidavit at all, as it bolstered USC's arguments. It was at this point that GBS and its counsel knew that their own evidence <u>and</u> the evidence presented by USIC supported the hurricane exclusion. But, for some reason, the case was not dismissed voluntarily by GBS at that time. Rather, the case proceeded for three more months (with the parties preparing for trial scheduled for November 6, 2019), until October 31, 2019, when Judge Cooke entered summary judgment in USIC's favor.

Accordingly, the Undersigned finds that GBS and its counsel Gregory Saldamando[10] acted in bad faith in continuing the litigation beyond July 29, 2019. *See Scelta v. Delicatessen Support Servs.*, Inc., 146 F. Supp. 2d 1255, 1271 (M.D. Fla. 2001) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)) ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest.").

Thus, the Undersigned **respectfully recommends** that the District Court find that USIC is entitled to its attorney's fees incurred beginning on July 29, 2019 for GBS and Gregory Saldamando's continued bad-faith prosecution of this lawsuit. USIC's attorney's

---

[10] Gregory Saldamando appears to be the attorney primarily involved in prosecuting this lawsuit at that time. He defended the deposition of Ms. Kardash and signed all of GBS's filings beginning in June 2019 until July 21, 2020.

fees incurred since July 29, 2019 shall be split equally between GBS and Gregory Saldamando.[11]

Finally, the Undersigned does not find that USIC is entitled to its non-taxable expert fees ($5,930.50) for Mr. Branscome's services, which were incurred on June 19, 2019 through July 23, 2019, or its attorney's fees (approximately $8,000) incurred before October 29, 2018, as a sanction for bad faith conduct because these amounts were incurred before July 29, 2019 (the point at which the Undersigned has determined that GBS and its attorney continued the prosecution of this lawsuit in bad faith). *See Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187 ("The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued.").[12]

## IV.    CONCLUSION

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** USIC's motion for attorney's fees

---

[11]    As discussed above, pursuant to § 768.79, GBS is already responsible for USIC's attorney's fees incurred since October 29, 2018. However, Mr. Saldamando shall pay 50% of the fees incurred since July 29, 2019. The same 10% across-the-board reduction shall apply to Saldamando's portion of the fees, as well.

[12]    Similarly, the Undersigned cannot say that USIC's expert fee and attorney's fees incurred before October 29, 2018 would not have been incurred if Mr. Saldamando had not produced the altered estimate to USIC.

incurred since October 29, 2018 pursuant to Fla. Stat. § 768.79 and award USIC **$55,007.10** in attorney's fees (applying a 10% across-the-board reduction).

As to USIC's motion for sanctions, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** USIC's motion for sanctions.

The Undersigned finds that sanctions are warranted for Mr. Saldamando's abuse of the discovery process by submitting an altered estimate. Therefore, the Undersigned **respectfully recommends** that Mr. Saldamando be responsible for half of USIC's attorney's fees incurred in bringing its motion for sanctions.

Additionally, the Undersigned finds that GBS and Mr. Saldamando acted in bad faith in continuing to prosecute this lawsuit beyond July 29, 2019 (the date when GBS submitted an affidavit from its own expert stating that the damage was caused by Hurricane Irma). Thus, the Undersigned **respectfully recommends** that the District Court require Mr. Saldamando and GBS to split equally the cost of USIC's attorney's fees incurred since July 29, 2019.

## V.    OBJECTIONS

The parties will have **ten (10)** days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge.[13] Each party may file a response to the other party's objection within **ten**

---

[13]    The time period for objections is being slightly shortened. The Undersigned has discretion to modify the deadlines and frequently does so in Reports and Recommendations.

**(10)** days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Henley v. Johnson,* 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, August 11, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record

41